## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

VICKY ENTERPRISES INC, individually and on behalf of all others similarly situated,

     *Plaintiff*,

vs.

ASR GROUP INTERNATIONAL, INC.; AMERICAN SUGAR REFINING, INC.; DOMINO FOODS, INC.; CARGILL, INC.; MICHIGAN SUGAR COMPANY; UNITED SUGAR PRODUCERS & REFINERS COOPERATIVE f/k/a UNITED SUGARS CORPORATION; COMMODITY INFORMATION, INC.; and RICHARD WISTISEN,

     *Defendants*.

**CASE NO.:**

**<u>JURY TRIAL DEMANDED</u>**

## <u>CLASS ACTION COMPLAINT</u>

## CONTENTS

INTRODUCTION ....................................................................................................... 1

NATURE OF THE ACTION ........................................................................................ 2

JURISDICTION AND VENUE ................................................................................... 2

THE PARTIES ............................................................................................................ 5

I.      Plaintiff ......................................................................................................... 5

II.     Defendants ..................................................................................................... 5

III.    Co-Conspirators ........................................................................................... 7

FACTUAL ALLEGATIONS ....................................................................................... 8

I.      The United States Granulated Sugar Market ............................................... 8

II.     Prior Collusion in the Sugar Industry .......................................................... 9

III.    Defendants Conspired to Artificially Raise, Fix, Maintain, or Stabilize Granulated
        Sugar Prices ................................................................................................ 11

IV.     The Granulated Sugar Market is Susceptible to Collusion .......................... 15

        A.      High Barriers to Entry ...................................................................... 15

        B.      The Commodity Nature of Granulated Sugar .................................. 16

        C.      The Granulated Sugar Market is Highly Concentrated and Dominated by
                Producing Defendants ...................................................................... 16

        D.      The Producing Defendants are Highly Vertically Integrated ........... 17

        E.      Opportunities to Collude .................................................................. 17

V.      Defendants' Conspiracy Artificially Inflated Sugar Prices During the Class Period .... 18

ANTITRUST INJURY & DAMAGES ........................................................................ 19

EQUITABLE TOLLING & FRAUDULENT CONCEALMENT .......................... 20

CLASS ACTION ALLEGATIONS ........................................................................... 21

CLAIMS FOR RELIEF ............................................................................................. 25

COUNT 1 ................................................................................................................... 25

i

COUNT 2 ................................................................................................................ 29

COUNT 3 ................................................................................................................ 29

COUNT 4 ................................................................................................................ 30

COUNT 5 ................................................................................................................ 30

COUNT 6 ................................................................................................................ 31

COUNT 7 ................................................................................................................ 32

COUNT 8 ................................................................................................................ 32

COUNT 9 ................................................................................................................ 33

COUNT 10 .............................................................................................................. 33

COUNT 11 .............................................................................................................. 34

COUNT 12 .............................................................................................................. 34

COUNT 13 .............................................................................................................. 35

COUNT 14 .............................................................................................................. 36

COUNT 15 .............................................................................................................. 36

COUNT 16 .............................................................................................................. 37

COUNT 17 .............................................................................................................. 37

COUNT 18 .............................................................................................................. 38

COUNT 19 .............................................................................................................. 38

COUNT 20 .............................................................................................................. 39

COUNT 21 .............................................................................................................. 39

COUNT 22 .............................................................................................................. 40

COUNT 23 .............................................................................................................. 40

COUNT 24 .............................................................................................................. 41

COUNT 25 .............................................................................................................. 41

COUNT 26 .............................................................................................................. 41

COUNT 27 ................................................................................................................ 42

COUNT 28 ................................................................................................................ 43

COUNT 29 ................................................................................................................ 43

COUNT 30 ................................................................................................................ 44

COUNT 31 ................................................................................................................ 44

COUNT 32 ................................................................................................................ 45

COUNT 33 ................................................................................................................ 45

COUNT 34 ................................................................................................................ 46

COUNT 35 ................................................................................................................ 46

COUNT 36 ................................................................................................................ 47

COUNT 37 ................................................................................................................ 47

COUNT 38 ................................................................................................................ 48

COUNT 39 ................................................................................................................ 49

COUNT 40 ................................................................................................................ 49

COUNT 41 ................................................................................................................ 50

COUNT 42 ................................................................................................................ 50

COUNT 43 ................................................................................................................ 51

COUNT 44 ................................................................................................................ 51

COUNT 45 ................................................................................................................ 52

COUNT 46 ................................................................................................................ 53

COUNT 47 ................................................................................................................ 53

COUNT 48 ................................................................................................................ 54

COUNT 49 ................................................................................................................ 54

COUNT 50 ................................................................................................................ 55

COUNT 51 ................................................................................................................ 55

COUNT 52 ................................................................................................................................. 56

COUNT 53 ................................................................................................................................. 56

COUNT 54 ................................................................................................................................. 57

PRAYER FOR RELIEF ............................................................................................................. 58

JURY DEMAND......................................................................................................................... 59

Plaintiff VICKY ENTERPRISES INC. ("VICKY ENTERPRISES"), individually and on behalf of all others similarly situated, brings this action to recover damages and secure injunctive relief against Defendants[1] for violations of (i) the antitrust laws of the United States, and (ii) the antitrust and consumer protection laws of the states set forth herein. Based on personal knowledge as to itself and its own actions, and upon information and belief as to all other matters, Plaintiff alleges:

## **INTRODUCTION**

1. Defendants and their co-conspirators conspired and combined to fix, raise, maintain, and stabilize prices for Granulated Sugar[2] sold throughout the United States since at least January 1, 2019.

2. In furtherance of this conspiracy, the Producing Defendants engaged in anticompetitive behavior including by price signaling and by exchanging competitively sensitive information related to pricing, production capacity, sales volume, and demand, including through Commodity. The Producing Defendants took these actions with the intent and effect of increasing Granulated Sugar prices throughout the United States.

3. For years, Commodity has enabled and encouraged the Producing Defendants, the nation's largest producers of Granulated Sugar, to exchange with each other detailed, non-public, competitively sensitive information regarding, among other things, prices (including prospective

---

[1] Defendants United Sugar Producers & Refiners f/k/a United Sugars Corporation ("United"); American Sugar Refining, Inc. ("ASR"); ASR Group International, Inc. ("ASR Group"); Domino Foods, Inc. ("Domino"); Cargill, Inc. ("Cargill"); and Michigan Sugar Company ("Michigan Sugar") are referred to collectively as the "Producing Defendants." ASR, ASR Group, and Domino are referred to collectively as "ASR/Domino." Defendant Richard Wistisen is the principal of Defendant Commodity Information, Inc., and together are referred to as "Commodity."

[2] "Granulated Sugar" refers to the ordinary, white, table sugar that is made from either cane or beet sugar that has gone through a refining process to remove the molasses and extract the sucrose, creating relatively large uniform crystals.

prices), capacity, sales volume, and demand.

4.      In doing so, Commodity promotes industry profits at the expense of competition. It does this by providing Producing Defendants with non-public insights into their competitors' production, costs, and pricing. Commodity enables and encourages Producing Defendants to use this information to increase prices for purchasers, and thereby increase their own profits.

5.      As a result of Defendants' unlawful agreement, indirect purchasers of Granulated Sugar in the United States and its territories, including Plaintiff and the Class Members, paid supra-competitive prices for Granulated Sugar sold by Producing Defendants in the United States and its territories beginning no later than January 1, 2019, and running through the present (the "Class Period"), in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3, and various state laws.

## NATURE OF THE ACTION

6.      Plaintiff, an indirect purchaser of Granulated Sugar, and the other Class Members suffered antitrust injury as a direct result of Defendants' unlawful conduct. Plaintiff seeks injunctive relief, costs of suit, and reasonable attorneys' fees under federal law, as well as injunctive relief, damages, costs of suit, and reasonable attorneys' fees under state law.  Plaintiff demands a jury trial.

## JURISDICTION AND VENUE

7.      Plaintiff brings this class action pursuant to Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1 and 3), and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) seeking to enjoin Defendants' anticompetitive conduct, and for costs of suit and reasonable attorneys' fees. Plaintiff also asserts state law claims for damages, including treble damages, injunctive relief, costs of suit, and reasonable attorneys' fees.

8.       This Court has subject matter jurisdiction pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a), 26), and 28 U.S.C. §§ 1331, 1337.

9.       Additionally, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action with more than 100 Class members, the amount in controversy exceeds $5 million exclusive of interest and costs, and there is minimal diversity.

10.      The Court also has supplemental jurisdiction over Plaintiff's and the Class Members' state law damages claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claim at the time this matter is brought that they form part of the same case or controversy.

11.      This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k) and 15 U.S.C. § 22, which permits a lawsuit to be filed against a corporation in any district where the corporation may be found or transacts business, and allows all process in such cases to be served in any district where the corporation may be found.

12.      The Court also has personal jurisdiction over Defendants based on their residency or transaction of business in the State of Florida. Defendants purposefully placed price-fixed Granulated Sugar into the steam of commerce in Florida. Defendants purposefully availed themselves of the benefits and protections of the laws of Florida, including by, among other things, directing their products at Florida and selling their products to Florida consumers, and by producing or refining their products in Florida.  Defendants also committed tortious acts in Florida, including by conspiring to violate federal and state antitrust laws in Florida. Furthermore, Defendants' subsidiaries and agents engaged in purposeful activities within Florida that are imputable to Defendants. Jurisdiction is also appropriate under the "conspiracy theory of

jurisdiction" recognized by the Florida Supreme Court. *Execu-Tech Business Sys., Inc. v. New Oji Paper Co., Ltd.*, 752 So. 2d 582 (Fla. 2000). As to the federal claims, this Court has jurisdiction based on Defendants' minimum contacts with Florida, and the exercise of jurisdiction over Defendants is reasonable given Defendants' extensive presence in Florida and the ubiquity of Defendants' products in Florida.

13.     Venue is proper in this District under Sections 4, 12, and 16 of the Clayton Act, (15 U.S.C. §§ 15, 22, and 26), and 28 U.S.C. § 1391, because one or more Defendants reside in, are found in, transacted business in, or have an agent who transacted business in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including sales of Granulated Sugar in this District.

14.     Moreover, ASR, ASR Group, and Domino have their principal place of business in Florida.  In fact, Florida is the largest sugarcane-producing region in the United States. Figure 1.

**Figure 1**



**The Sugar Industry Is Highly Concentrated In Just A Few States**

Only 1% of U.S. counties produce 75% of sugar in the U.S.

Minnesota produces **one-third** of all beet sugar in the U.S.

Just **18 counties and parishes** across Louisiana and Florida account for **90%** of all sugarcane production in the U.S.

**50%** of all American sugarcane production occurs in **3 counties** in Florida

Percentage of Sugar Production
> 15%      < 5%
5% - 15%   No sugar production

Source: USDA National Agricultural Statistics Service

**Manufacturers who use sugar as an ingredient are in all 50 states**

15.     During the Class Period, the Producing Defendants sold and shipped sugar in a continuous and uninterrupted flow of interstate commerce, which included sales and shipments to or from this District. Defendants' conduct had a direct, substantial, and reasonably foreseeable effect on interstate commerce in the United States, including this District.

## THE PARTIES

**I.     Plaintiff**

16.     Plaintiff is a Florida corporation with its principal place of business in Medley, Miami-Dade County, Florida. During the Class Period, Plaintiff purchased Granulated Sugar indirectly from one or more Defendants or their co-conspirators in Florida.  Plaintiff suffered, and continues to suffer, antitrust injuries as a direct and proximate result of Defendants' anticompetitive behavior described in this Complaint.

**II.     Defendants**

17.     Defendant ASR Group is a privately held Florida corporation based in West Palm Beach, Florida. ASR Group is "the world's largest refiner and marketer of cane sugar, with an annual production capacity of 6 million metric tons of sugar."[3] ASR Group is owned by two Florida-based sugarcane companies, Florida Crystals Corporation and Sugar Cane Growers Cooperative of Florida.

18.     Defendant ASR is a privately held Florida corporation and global producer and seller of Granulated Sugar based in West Palm Beach, Florida.

19.     Defendant Domino is part of ASR Group.[4] It is ASR Group's and ASR's marketing

---

[3] *Who We Are*, ASR Group (last accessed Apr. 5, 2024), *available at* https://www.asr-group.com/about-us/our-owners.
[4] *Stores Near Your*, Domino Foods, Inc. (last accessed Arp. 5, 2024), *available at* https://www.dominosugar.com/store-locator.

and sales subsidiary for Granulated Sugar. Its current principal place of business in West Palm Beach, Florida. Domino and its affiliates own and operate five sugar cane refineries in Louisiana, Maryland, Florida, New York, and California, as well as raw sugar mills in Florida.[5]

20.     Domino markets the ASR Group's sugar products throughout the United States, including in Florida. For instance, Domino's website, dominosugar.com, shows users locations in the United States where ASR Group's products are sold. Those locations include stores in this District.[6]

21.     ASR/Domino markets and sells its Granulated Sugar under the brand names Domino®, C&H®, Florida Crystals®, Redpath®, Tate & Lyle®, Lyle's® and Sidul®.[7]

22.     Defendant United is a Minnesota corporation based in Edina, Minnesota. United is a cooperative with four member owners: (1) United States Sugar Corporation, which owns and operates a cane sugar refinery in Clewiston, Florida; (2) American Crystal Sugar Company; (3) Minn-Dak Farmers Cooperative; and (4) Wyoming Sugar Company, LLC.  United produces cane sugar in Florida.[8]  United's retail brands include Crystal Sugar®.[9]

23.     Defendant Cargill, Inc. ("Cargill") is a Delaware corporation with its principal place of business in Minnetonka, Minnesota. Cargill is a global producer and seller of Granulated Sugar. Cargill's sugar production and distribution is conducted through a joint venture with Louisiana Sugar Growers and Refiners, Inc. known as Louisiana Sugar Refining.

---

[5] Defs.' Proposed Findings of Fact at 9, *U.S. v. United States Sugar Corp., et al.*, No. 21-CV-1644 (MN) (D. Del. May 26 2022) [ECF No. 231 at 15] ("United States Sugar").
[6] *Stores Near Your*, Domino Foods, Inc. (last accessed Arp. 5, 2024), *available at* https://www.dominosugar.com/store-locator.
[7] *Who We Are*, ASR Group.
[8] *FAQ*, United Sugars (last accessed Apr. 5, 2024), *available at* https://unitedsugarpr.com/faq/.
[9] *Retail Products*, United Sugars (last accessed Apr. 5, 2024), *available at* https://unitedsugarpr.com/product-category/retail-products/.

24.     Defendant Michigan Sugar Company, ("Michigan Sugar") a Michigan corporation, is a cooperative consisting of 900 sugar beet owners. It is headquartered in Bay City, Michigan and has sugar beet processing facilities in Bay City, Caro, Croswell, and Sebewaing, Michigan. It also has warehouse facilities in Michigan and Ohio.

25.     Defendant Commodity Information, Inc. ("Commodity") is a Delaware corporation based in Orem, Utah. Throughout the Class Period, the Producing Defendants utilized Commodity to implement the conspiracy and the exchange of confidential, proprietary, and competitively sensitive non-public information.

26.     Defendant Wistisen is the principal of Commodity who, as part of the price-fixing conspiracy, collected and shared confidential, proprietary, and competitively sensitive non-public information among the Producing Defendants.

III.    **Co-Conspirators**

27.     Each Defendant was a knowing participant in the conspiracy alleged herein. Defendants and unnamed co-conspirators committed overt acts in the United States, including in this District, in furtherance of the conspiracy alleged herein.  Defendants participated in the conspiracy through the actions and omissions of their officers, directors, employees, agents, representatives, and subsidiaries.

28.     Unnamed co-conspirators, agents, and affiliates, known or unknown at this time, knowingly conspired and worked in concert with Defendants in furtherance of the conspiracy alleged herein.

29.     Defendants are liable for the actions and omissions of their co-conspirators, including for reasonably foreseeable actions taken by the co-conspirators in furtherance of the conspiracy alleged herein, regardless of whether such co-conspirators are named as defendants in

this action.

## FACTUAL ALLEGATIONS

### I.     The United States Granulated Sugar Market

30.     "Granulated Sugar," also known as "refined," "white," or "table" sugar, is a product made from sugarcane or beet sugar that has undergone a refining process to remove molasses and extract sucralose and is then ground into relatively uniform crystals, refined, and sold to direct purchasers who resell, consume, or further refine it into other products.

31.     Sugarcane is grown in tropical and semitropical climates. In the United States, sugarcane is produced in Florida, Louisiana, and Texas.[10]

32.     Florida is the largest cane-producing region in the United States.

33.     Sugar beets, the other leading raw material for manufactured sugar in the United States, are grown in 4 regions encompassing 11 states and tend to be grown in rotation with other crops. The Great Lakes region (Michigan) is the only growing region east of the Mississippi River. The other three growing areas are the Upper Midwest (Minnesota and North Dakota), the Great Plains (Colorado, Montana, Nebraska, and Wyoming), and the Far West (California, Idaho, Oregon, and Washington).[11]

34.     The Granulated Sugar produced from sugarcane and sugar beets is used both by institutional users such as restaurants and other food service businesses, as well as by ordinary consumers as a household sweetener.

35.     While some larger commercial users purchase Granulated Sugar directly from the

---

[10] *Background*, Sugars & Sweeteners, U.S. Dep't of Agric. Econ. Research Serv. (last accessed Apr. 5, 2024), *available at* https://www.ers.usda.gov/topics/crops/sugar-and-sweeteners/background/.

[11] *Background*, Sugars & Sweeteners, U.S. Dep't of Agric. Econ. Research Serv. (last accessed Apr. 5, 2024), *available at* https://www.ers.usda.gov/topics/crops/sugar-and-sweeteners/background/.

Producing Defendants either for resale or for manufacturing purposes (*i.e.*, "Direct Purchasers"), many commercial entities purchase Granulated Sugar indirectly through intermediaries such as sugar wholesale distributors, food service distributors, or grocery retailers. In addition, consumer end-users also purchase Granulated Sugar indirectly, typically through retailers. These latter types of purchasers are referred to herein as "indirect purchasers."

36.     Although refined sugar is sometimes sold as a liquid or powder, Granulated Sugar is the predominant form sold and accounts for approximately 80% of all refined sugar sold.[12]

37.     The U.S. Granulated Sugar Industry is projected in the billions of dollars in 2024.

38.     During the Class Period, the Producing Defendants collectively controlled a dominant share of the United States Granulated Sugar market. Presently, the Producing Defendants have an estimated combined market share of at least 68% in the United States Granulated Sugar market.[13] Upon hearing the announcement regarding United's acquisition of Imperial, one Producing Defendant noted that "they view this as 1 less competitor and now 3 companies account for 75% of the market."[14]

## II.     Prior Collusion in the Sugar Industry

39.     The producers of domestic refined sugar have been found liable for antitrust violations at least three times over the past eighty years, including for engaging in conduct similar to that alleged herein.

40.     In 1936, the United States Supreme Court upheld a lower court ruling that the major refined sugar producers unreasonably restrained trade by, among other things, creating an industry

---

[12] ECF No. 219 ¶ 25, *United States Sugar*.
[13] ECF No. 231 ¶ 177, *United States Sugar*.
[14] ECF No. 207-24, *United States Sugar*.

trade association. The "Sugar Institute" enabled a scheme whereby "defendants agreed to sell, and in general did sell sugar only upon open prices, terms and conditions publicly announced in advance of sales, and they agreed to adhere and in general did adhere without deviation, to such prices, terms and conditions until they publicly announced changes."[15]

41.     Twelve years later, sugar producers in California were accused of conspiring to fix the prices they paid to acquire sugar beets from growers. The trial court found in favor of the Plaintiffs after a trial on the merits and awarded them treble damages and attorneys' fees. This ruling was upheld by the Ninth Circuit Court of Appeals.[16]

42.     More recently, in 1978, sugar producers—again standing accused of anticompetitive conduct—entered into a consent decree with the United States Department of Justice, which enjoined them from, among other things, entering into any future agreements or combinations to: "[f]ix, raise, maintain or stabilize the prices, terms or conditions for the sale of refined sugar"; "[g]ive any prior notice of or announce in advance any change or contemplated change in prices, terms or conditions for the sale of refined sugar"; "[d]irectly communicating to any other refiner information concerning Future Prices"; or "[r]equesting, requiring or coercing any third person . . . to communicate to any other refiner, information concerning Future Prices."[17]

43.     The DOJ's and Federal Trade Commission's ("FTC") "Merger Guidelines" specifically identify "Prior Actual or Attempted Attempts to Coordinate" as a "Primary Factor" in determining whether practices such as information sharing are likely to increase the risk of anticompetitive conduct.[18]

---

[15] *Sugar Inst. v. United States*, 297 U.S. 553, 582 (1936).
[16] *Am. Crystal Sugar Co. v. Mandeville Island Farms*, 195 F.2d 622 (9th Cir. 1952).
[17] *United States v. Great W. Sugar Co.*, No. 74-2674 SW, 1978 WL 1399, at *2 (N.D. Cal. Sept. 13, 1978).
[18] *Merger Guidelines 2023*, U.S. Dept. of Justice and Fed. Trade Comm. (Dec 18, 2023) (last accessed Apr. 5,

III.    **Defendants Conspired to Artificially Raise, Fix, Maintain, or Stabilize Granulated Sugar Prices**

44.    Since at least 2019, the Producing Defendants conspired to restrain trade by artificially raising, fixing, stabilizing, or maintaining Granulated Sugar prices in the United States. To effectuate their unlawful agreement, the Producing Defendants engaged in price signaling and exchanged detailed, accurate, non-public, competitively sensitive information (including forward-looking price information), both directly and through Defendants Commodity and Wistisen.

45.    Defendants have exchanged competitively sensitive information for years.[19] There is no economically rational reason for the Producing Defendants to share competitively sensitive information with their competitors. Producing Defendants shared competitively sensitive information to carry out their unlawful scheme and avoid competition on the merits.

46.    Defendant Commodity purports to offer analysis of the sugar industry, yet it has no public presence: it does not advertise its services to the public, it does not have a website, and it does not appear to market its "Domestic Sugar Monthly Report" or other analyses to anyone but a select few (*i.e.*, the Producing Defendants or other refiners who share their competitively sensitive information). Notably, these reports are not made available to the Producing Defendants' customers or consumers, thereby giving the Producing Defendants an unfair competitive advantage over other market participants.

47.    The information Commodity gathers includes the Producing Defendants' current pricing, future or forward pricing, pricing strategies, copy size/yields, sold positions, spot prices, and contract prices. This information is not obtained through anonymous surveys or polling, and

---

2023), *available at* https://www.ftc.gov/reports/merger-guidelines-2023.
[19] ECF No. 219 ¶¶ 140-50, *United States Sugar*.

the information Commodity shares with the Producing Defendants is not aggregated. Instead, the Producing Defendants each regularly share competitively sensitive information regarding pricing and sold positions with Commodity, who then immediately shares that non-aggregated, non-anonymized competitively sensitive information with the other Producing Defendants. These reciprocal exchanges occurred rapidly, often within hours of receipt, and that information was used by the Producing Defendants in deciding how much to charge for their Granulated Sugar.

48.    The Producing Defendants are aware that sharing competitively sensitive non-public information is anticompetitive and violates the spirit and purpose of the antitrust laws.  The Producing Defendants' codes of conduct explicitly acknowledge that agreements to fix prices are unlawful and that information regarding prices and sales should not be shared, directly or indirectly, with competitors. But that is precisely what the Producing Defendants have done.

49.    The Producing Defendants realized that sharing competitively sensitive information among themselves would hinder sugar purchasers' ability to negotiate prices.

50.    Defendants' purpose and goal is clear: to avoid competing with one another by ensuring they did not undercut each other's prices, thus maintaining Granulated Sugar prices at prices higher than they otherwise would be in a competitive market. As the dominant producers in the sugar industry, the Producing Defendants are not competitively restrained by smaller market participants as the Producing Defendants collectively account for the majority of Granulated Sugar production and sales in the United States.

51.    The Producing Defendants, in furtherance of their unlawful agreement, use the competitively sensitive information that they exchanged with one another through Commodity when deciding how much to charge their customers for Granulated Sugar during the Class Period. Each of the Producing Defendants participated in such exchanges of competitively sensitive

information to implement their conspiracy to fix Granulated Sugar prices. Examples of such exchanges are listed below:

a.   **United:** September 21, 2020 – Mr. Wistisen (a principal of Commodity) emailed United's Mr. Speece and ASR/Domino's Mr. Henderson within minutes of each other, asking them about their current prices and if there was "anything new of interest on the pricing front?" Both competitors quickly responded and reported their prices and sold positions, and Mr. Wistisen shared each respective competitor's response with the other.

b.   **ASR/Domino:** November 16, 2020 – Mr. Wistisen contacted United's Eric Speece and asked, "Where would you put spot and forward beet prices?" Approximately 38 minutes later, Mr. Wistisen asked Domino's Alan Henderson, "Where would you put prices and cane coverage?" Both Mr. Speece and Mr. Henderson responded that same day with pricing information.

c.   **Cargill:** May 26, 2021 – Mr. Sproull testified during the *United States v. U.S. Sugar Corp.* trial that he received an email from ASR/Domino's Mr. Henderson discussing Cargill pricing information that originated from "Rich Wistisen," "the sugar industry analyst."

Sept. 21, 2020 – Mr. Speece testified during the *United States v. U.S. Sugar Corp.* trial that he had email correspondence with Mr. Wistisen where Mr. Wistisen passed "along information about how much business Cargill has booked for the 2021 fiscal year."

d.   **Michigan Sugar:** In an email on September 21, 2020, Mr. Wistisen reached out to United's Mr. Speece asking: "Anything new of interest on the pricing front? Hearing beets well sold, except possible NSM (80-85%), and prices firm to higher. Michigan $38.5+…. ."33 The next day, Mr. Wistisen wrote, "Waiting for confirm from Michigan," which Mr. Speece testified he understood to mean that "he's waiting to confirm how sold they are."

52.   The information exchanges between the Producing Defendants and Commodity were specifically coordinated such that the Producing Defendants would timely receive each other's information. For example:

a.   September 21, 2020 – Mr. Wistisen emailed United's Mr. Speece and ASR's Mr. Henderson within minutes of each other, asking them about their current prices and if they will be "firm to higher." Within a day, both competitors had reported their prices and sold positions, and Mr. Wistisen communicated each respective competitor's report to the other. He also stated: "Waiting to confirm from Michigan [Sugar].

      b.     November 17, 2020 – The day after the November 16, 2020 emails referenced above, Mr. Wistisen emailed United's Mr. Speece and relayed the specific pricing information that Domino's Mr. Henderson shared with him the day prior: "ASR saying prices keep climbing: $46 spot all locations….Waiting to hear back from most contacts… ." Mr. Wistisen also emailed Mr. Henderson that same day and forwarded the pricing information shared by Mr. Speece.

53.     The pricing information Defendants exchanged included not only current prices, but prospective prices and sold positions.  For example:

      a.     March 2020 – After attending the International Sweetener Colloquium the week before in Palm Springs, California, ASR/Domino's Mr. Henderson reported back to his colleagues, among other things, their competitors' pricing plans for Fiscal Year 2021.

      b.     September 21, 2020 – Mr. Wistisen reported to ASR/Domino's Mr. Henderson: "Hearing beets well sold, except possibly NSM 80 to 85 percent and prices firm to higher. Michigan $38.50 plus selective selling…"

      c.     February 17, 2021 – Mr. Wistisen exchanged emails with ASR/Domino's Mr. Henderson about United's prospective pricing strategy, and Mr. Wistisen responded: "Long conversation with United: won't set FY22 price list until March, but the plan remains to hold steady at $36.50 and $38.50 based on demand."

      d.     February 15, 2021 – ASR/Domino's Mr. Henderson emailed Mr. Wistisen and reported: "We [Domino] are still at $36.50 and $38.50 with zero problems selling at those values. I do not anticipate any changes to our prices… ."

      e.     May 18, 2021 – Mr. Wistisen informed ASR/Domino's Mr. Henderson about United's pricing "…expect big action over the next month, 20+% add to bookings, and at that time expect to raise prices, and not by just a dollar."

54.     The Producing Defendants knew that the competitively sensitive information they received through Commodity was accurate and they could rely on it. For example, on February 17, 2021, Domino's Mr. Henderson wrote his colleague, Mr. Whittaker, forwarding information about competitor United received by Mr. Wistisen, noting, "United is usually pretty upfront with Rich [Wistisen]."

55.     Furthermore, these information exchanges were expressly and intentionally used

for price fixing. For example:

     a.   September 2019 – Defendant United's CEO stated that United tried to push prices higher" by putting an expiration date on pending offers, which he further explained sent a message to "competitors that we were not interested in allowing the market to slip lower." Similar documents unveiled by DOJ further reveal a Domino executive stating, "[w]e need to signal to the market that we're going to maintain price," one executive stating that the "main downside" to lowering an Imperial bid "would be snatching something from United just as they are starting to show some upside price movement."

     b.   January 8, 2020 – ASR's Rob Sproull emailed his colleague Alan Henderson stating: "I think it's really important we signal to the market that there's still going to be tightness…We need to signal to the market that we're going to maintain price, especially for the Oct- Dec quarter."

     c.   June 18, 2020 – ASR Group's Alan Henderson emailed his colleague, Adam Whittaker regarding a quote needed for major customer Piedmont Candy Corporation, where he stated he "would love to get aggressive here [on pricing]" but that "[w]e would like to avoid sending a signal out to competitors that we are chasing business and lowering price off the standard $41.00 bulk basis."

     d.   November 16, 2020 – United's Mr. Swart emailed his colleague Mr. Speece, stating that he wanted Mr. Wistisen to "hear" that United's current beet sugar price was $36.50 and cane sugar price was $38 but United was contemplating increasing its prices given its sold position.

     e.   January 20, 2021 – United's Eric Speece emailed his colleague at United, Dirk Swart, that one competitor was selling at too low a price and suggested, "May want to communicate pricing earlier than the colloquium to send a msg."

56.    The Producing Defendants were careful to avoid detection of their unlawful scheme. For example, in an email from United's Eric Speece discussing exchanging information with a competitor, Mr. Speece stated a preference for a phone call rather than putting anything in writing.

## IV.   The Granulated Sugar Market is Susceptible to Collusion

### A.   *High Barriers to Entry*

57.    The Granulated Sugar market is wrought with high barriers to entry which make it

prohibitively difficult for new producers to enter the market. A new entrant into the market would face costly and lengthy start-up costs, including large capital investments associated with constructing processing plants, refiners, transportation infrastructure, skilled labor, creation of sugarcane/sugar beet farms or contracts with sugarcane/sugar beet farmers, and regulatory approvals. In addition, most existing competitors, like the Producing Defendants, are large, vertically integrated operations that not only have longstanding customer and supplier relationships, but they also benefit from economies of scale and access to loans and production allotments offered by the USDA only to the larger, vertically integrated producers.

**B.** *The Commodity Nature of Granulated Sugar*

58.     Granulated Sugar is a standardized, homogenous commodity product with little or no product differentiation based on producer. Conspiracies are more likely to form when the products sold by competitors are commodities. When different suppliers in an industry offer similar products, customers are less likely to choose a vendor based on product characterizations and are more likely to choose on the basis of price. In commodity markets, it is easier for competing firms, such as the Producing Defendants, to reach an agreement on a common price structure because their products are fungible and have common features and qualities.

59.     Since Granulated Sugar is a commodity product lacking any meaningful substitutes, the market for Granulated Sugar in the United States is characterized by inelastic demand. Thus, the Producing Defendants know they could demand higher prices when Granulated Sugar supplies are low without the fear of consumers switching to another product.

**C.** *The Granulated Sugar Market is Highly Concentrated and Dominated by Producing Defendants*

60.     The market for Granulated Sugar in the United States is highly concentrated. First, the Producing Defendants collectively held a dominant share of the market during the Class

Period. Second, the market became even more concentrated in 2022, when United acquired Imperial, a corporate merger Senators Elizabeth Warren and Cory Booker recognized would "likely" increase sugar prices.[20] Finally, "competitors" United and ASR (through its subsidiary Domino) have related ownership interests. More specifically, United member U.S. Sugar has a partial ownership interest in Sugar Cane Growers Cooperative, which is a part-owner of Domino.[21]

### D.   *The Producing Defendants are Highly Vertically Integrated*

61.   The U.S. domestic sugar industry is almost entirely vertically integrated. The Producing Defendants and other sugar producers own or tightly control almost all aspects of producing, processing, and refining sugarcane and sugar beets into Granulated Sugar, and of marketing Granulated Sugar.

62.   The Producing Defendants benefited from the United States Department of Agriculture's ("USDA") Sugar Program, which—although it did not set, approve, or otherwise regulate actual sales prices for Granulated Sugar—limited the number of sources of raw sugar from which Granulated Sugar could be refined and protected the Producing Defendants from foreign competition by limiting imports. As a result of this program, the Producing Defendants know they can charge higher prices for Granulated Sugar as their sold positions increase because there will be little to no additional competitive product available in the market to constrain them.

### E.   *Opportunities to Collude*

63.   Each Producing Defendant was a member of, and participated in, either directly or through one of their its companies, various trade associations including the Sugar Association and

---

[20] Letter from Elizabeth Warren and Cory Booker, U.S. Senators, to Thomas J. Vilsack, Sec'y U.S. Dept. of Ag. (Nov. 14, 2022), *available at* https://www.warren.senate.gov/imo/media/doc/2022.11.14%20Letter%20to%20USDA%20re%20Sugar%20Merger.pdf.
[21] ECF No. 219 ¶ 136, *United States Sugar*.

the American Sugar Alliance. These trade associations provided Defendants with ample opportunities to collude during the Class Period.

64.     For example, the American Sugar Alliance holds an annual symposium sponsored and attended by the Producing Defendants where attendees not only participated in industry discussion, but also engaged informal, social activities such as golf outings.

65.     In addition to attending industry meetings together, key personnel who work at different Producing Defendants are close personal friends and certain key players have worked for more than one Defendant during their career. For example, Eric Speece, currently the Director of Strategic Accounts at United, has known Defendant Wistisen from when Mr. Speece previously worked at Cargill.[22]

## V.    Defendants' Conspiracy Artificially Inflated Sugar Prices During the Class Period

66.     During the Class Period, the price of Granulated Sugar increased dramatically without any economic rational basis.

67.     Granulated Sugar prices rose during the Class Period in a manner inconsistent with prior pricing patterns. Figure 2.[23]

---

[22] ECF No. 227, Trial Tr. 464:13-18, *United States Sugar*.
[23] *Producer Price Index by Industry: Sugar Manufacturing*, FRED Economic Data, St. Louis Fed., https://fred.stlouisfed.org/series/PCU3113131131 (last accessed Apr. 5, 2024).

**Figure 2: 2014.01.01 – 2024.01.01**



68.    The spot price for sugar has also increased dramatically during the Class Period.

69.    Overall, prices for Granulated Sugar increased significantly shortly after the alleged conspiracy began in or around January of 2019.

<u>**ANTITRUST INJURY & DAMAGES**</u>

70.    Defendants' anticompetitive conduct had the following effects, among others:

a.      Price competition has been restrained or eliminated with respect to Granulated Sugar.

b.      The price of Granulated Sugar has been fixed, raised, stabilized, or maintained at artificially, supra-competitive levels.

c.      Indirect purchasers of Granulated Sugar have been deprived of free and open competition; and

d.      Indirect purchasers of Granulated Sugar paid artificially inflated prices.

71.    The purpose of the conspiratorial conduct of Defendants and their coconspirators was to raise, fix, or maintain the price of Granulated Sugar. As a direct and foreseeable result, Plaintiff and the Class paid supra-competitive prices for Granulated Sugar during the Class Period.

72.    By reason of the alleged violations of the antitrust laws, Plaintiff and Class Members have sustained injury, having paid higher prices for Granulated Sugar than they would

have paid in the absence of Defendants' illegal conspiracy.

73.     These overcharges caused by Defendants' conspiracy are the type of injury the antitrust laws were intended to prevent.

74.     It is well-established that in a multi-level chain of distribution an overcharge is felt throughout the chain of distribution.  At least some portion of an anticompetitive overcharge will be passed on to end users.

75.     Consequently, while direct purchasers were the first to pay supra-competitive prices, some or all of the overcharge was passed along the distribution chain and absorbed by Plaintiff and Class Members when they purchased Granulated Sugar from non-defendants.

76.     Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiff and the Class Members can be quantified.

## EQUITABLE TOLLING & FRAUDULENT CONCEALMENT

77.     Any applicable statute of limitations for Plaintiff's and the Class Members claims as alleged in this Complaint are tolled by equitable estoppel due to Defendants' concealment of their unlawful actions.

78.     Plaintiff and Class Members did not have actual or constructive notice of the conspiracy alleged herein until, at the earliest, the DOJ's Findings of Fact in support of its petition to stop the merger of United and Imperial were made public. In particular, the full scope of Defendants' unlawful conduct could not have been discovered until the appellate exhibits from that matter were made available to the public.

79.     The conspiracy alleged herein is inherently self-concealing. Nevertheless, Defendants affirmatively and fraudulently concealed their unlawful, anticompetitive conduct from

Plaintiff and Class Members throughout the Class Period.

80.     Plaintiff and Class Members all reasonably relied on Defendants' overt assurances to conduct lawful business in an ethical and fair manner, preventing Plaintiff and Class Members from discovering the unlawful conduct of Defendants. In that regard, Defendants ASR Group, Cargill, and United each publish some type of code of conduct on their websites, assuring its business partners and the public at large that they operate in a lawful and ethical manner.

## CLASS ACTION ALLEGATIONS

81.     Plaintiff brings this action individually and on behalf of all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(2), as representative of a class of indirect purchasers seeking injunctive relief (the "Nationwide Class"), defined as follows:

      a.    All persons or entities that purchased Granulated Sugar indirectly from one or more of the Producing Defendants or their co-conspirators in the United States from January 1, 2019, until the Defendants' unlawful conduct and its anticompetitive effects cease to persist.

82.     In addition, Plaintiff brings this action individually and as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3), as representative of a class of indirect purchasers seeking damages and equitable relief pursuant to the antitrust and deceptive and unfair practices and consumer protection laws of the following states (the "State Law Classes"), defined as:

      a.    All persons or entities that purchased Granulated Sugar indirectly from one or more of the Producing Defendants or their co-conspirators in _____ (*e.g.*, Florida) from January 1, 2019, until the Defendants' unlawful conduct and its anticompetitive effects cease to persist.

83.     Excluded from each of the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, all judges

21

assigned to this matter, all jurors in this matter, and all persons and entities who only purchased Granulated Sugar directly.

84.     ***Numerosity***. The members of the Nationwide Class and the State Law Classes are so numerous as to render their individual joinder impracticable. Although the precise number of the members of the Nationwide Class and the State Law Classes is unknown, based upon information and belief Plaintiff alleges that the Nationwide Class and the State Law Classes contain hundreds of thousands, if not millions, of members geographically dispersed throughout the United States.

85.     ***Commonality and Predominance.*** Common questions of law and fact exist as to all members of the Nationwide Class and the State Law Classes, and such questions predominate over any question affecting only individual members of the Nationwide Class and the State Law Classes. The common legal and factual questions, each of which also may be certified under Rule 23(c)(4), include but are not limited to the following:

a.     Whether Defendants and their co-conspirators conspired to restrain trade by fixing, raising, maintaining, or stabilizing prices of Granulated Sugar in the United States.

b.     The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy.

c.     Whether the alleged conspiracy violated antitrust laws, unfair competition laws and/or consumer protection laws.

d.     Whether the conduct of Defendants and their co-conspirators, caused Plaintiff and members of Nationwide Class and the State Law Classes to suffer an injury.

e.     Whether the conduct of Defendants and their co-conspirators caused the prices for Granulated Sugar sold in the United States to be higher than they would have been in a competitive market.

f.     Whether Plaintiff and other members of the Nationwide Class and the State Law Classes are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief.

g.      Whether Defendants concealed their unlawful conspiracy.

h.      The appropriate class-wide measure of damages.

86.      These and other questions of law or fact which are common to the members of the Nationwide Class and the State Law Classes predominate over any questions affecting only individual members of the Classes.

87.      **_Typicality._** Plaintiff's claims are typical of the claims of the members of the Nationwide Class and the State Law Classes because their claims arise from the same course of conduct by Defendants, and the relief sought within the Nationwide Class and the State Law Classes is similar as to each member.

88.      **_Adequacy of Representation._** Plaintiff will fairly and adequately protect the interests of the Nationwide Class and the State Law Classes. Plaintiff has retained trial counsel highly experienced in complex litigation including complex antitrust class action litigation, and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interest in this action that is adverse or antagonistic to the interests of the Nationwide Class and the State Law Classes.

89.      **_Superiority_**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Nationwide Class and the State Law Classes would impose heavy burdens on the Court and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Nationwide Class and the State Law Classes. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Absent a class action, it would not be practicable for the members of the Nationwide Class and State Law Classes to seek redress for the

violations of law alleged herein.

90.     Furthermore, the Nationwide Class and the State Law Classes may be certified under Rule 23(b)(2) because Defendants have acted (and continue to act) on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

## CLAIMS FOR RELIEF

### FEDERAL CLAIMS

#### COUNT 1
**The Sherman Act, 15 U.S.C. §§ 1, 3**
**Conspiracy in Restraint of Trade**

91.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 – 90 above as if fully set forth herein.

92.     From at least January 1, 2019, continuing through the present date, and until the effects of their unlawful conduct cease, the exact dates being unknown to Plaintiff and Class Members, Defendants and their co-conspirators conspired, combined, colluded, and agreed to restrain trade by artificially fixing, raising, or stabilizing the price for Granulated Sugar in the United States, in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

93.     Defendants' anticompetitive acts had a direct, substantial, and foreseeable effect on interstate trade or commerce by causing prices for Granulated Sugar to be higher than they otherwise would have been in a competitive market.

94.     In formulating and carrying out the alleged agreement and understanding to restrain trade and raise prices, Defendants and their co-conspirators did those things that they combined and conspired to do, including the acts, practices, and course of conduct set forth in this Complaint. Defendants' conspiracy had the following effects, among others:

    a.    Price competition in the sale of Granulated Sugar has been restrained, suppressed, and/or eliminated in the United States;

    b.    Prices for Granulated Sugar sold, directly and indirectly, by Defendants and all of their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels throughout the United States; and

    c.    Those who purchased Granulated Sugar indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition, resulting in artificially high prices paid for Granulated Sugar.

95.     Defendants took all the actions alleged in this Complaint with the knowledge and intended effect that their actions would proximately cause the price of Granulated Sugar to be higher than it would be but for their conduct.

96.     As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiff and Class Members have been injured in their business or property and will continue to be injured in their business and property by paying more for Granulated Sugar than they would have paid and will pay in the absence of the conspiracy.

97.     The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

98.     Under federal law, Plaintiff and Class Members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein, as well the costs of suit, including attorneys' fees.

## STATE LAW CLAIMS

99.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 – 90 above as if fully set forth herein.

100.     During the Class Period, Defendants and their co-conspirators entered and engaged in a contract, combination, or conspiracy to fix, stabilize, or maintain prices of Granulated Sugar sold in various states and to unreasonably restrain trade and commerce, in violation of various state antitrust and consumer protection laws set forth below.

101.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the conspiracy, including: agreeing to fix, maintain, or stabilize Granulated Sugar prices, which injured Plaintiff and members of the State Law Classes; exchanging competitively sensitive information between and among Defendants; and

participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

102.    Defendants and their co-conspirators engaged in the actions described herein for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize Granulated Sugar prices at artificially high levels.  As a direct and proximate result of Defendants' conduct, Plaintiff and members of the State Law Classes were deprived of free and open competition and paid more to purchase Granulated Sugar than they otherwise would have in the absence of Defendants' unlawful conduct.  This injury is of the type that the antitrust laws of the states specified herein were designed to prevent, and the injury flows from Defendants' unlawful conduct.

103.    To the extent necessary under state law, Plaintiff, Class Members, and Defendants are persons within the meaning of the various states' laws alleged herein.

104.    To the extent necessary under state law, Plaintiff and Class Members are consumers within the meaning of the various states' laws alleged herein.

105.    To the extent necessary under state law, Defendants are engaged in trade or commerce within the meaning of the various states' laws alleged herein.

106.    The Granulated Sugar products manufactured and produced by the Producing Defendants are goods, merchandise, and items as those terms are defined in the various states' laws alleged herein.

107.    Defendants concealed, omitted, and failed to disclose their collusion and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members of the State Law Classes.

108.    The omitted facts are and were material to a reasonable consumer purchasing Granulated Sugar produced by the Producing Defendants because the omitted facts had a tendency or capacity to mislead consumers acting reasonably under the circumstances and with the information available to the public; tended to create a false impression in consumers acting reasonably; and in fact deceived reasonable consumers, including Plaintiff and Class Members of the State Law Classes.

109.    To the extent knowledge is required by state law, Defendants knew or should have known of the collusive conduct and anticompetitive actions perpetrated by their agents and representatives; knew or should have known that such conduct and subsequent omissions were likely to mislead the consuming public; and knew or should have known that such conduct and omissions violated the consumer protection laws of the states specified herein.

110.    Defendants' collusive behavior and conspiracy, and omissions thereof, constitute unfair, deceptive, and unconscionable practices as those terms are defined in the laws of the states specified herein.

111.    Plaintiff and Class Members were injured as a result of Defendants' omissions because they overpaid for Granulated Sugar produced by the Producing Defendants.

112.    Plaintiff and Class Members suffered ascertainable, actual losses as a result of Defendants' omissions and collusive behavior.  Had Plaintiff and Class Members been aware of Defendants' anticompetitive conspiracy and price-fixing, Plaintiff and Class Members would have paid less for Granulated Sugar produced by the Producing Defendants or purchased Granulated Sugar produced by non-defendants.  Plaintiff and Class Members were also deprived of free and open competition in the market.  This injury is the type that the antitrust and consumer protection laws of the states specified herein were designed to prevent.

113.    As a direct and proximate result of Defendants' omissions, collusive behavior, and anticompetitive conspiracy, Plaintiff and Class Members suffered an injury-in-fact and actual damages.

114.    Accordingly, Plaintiff and Class Members seek damages (including statutory damages and treble damages where applicable), injunctive relief, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws:

**COUNT 2**
**Alabama**
**Ala. Code §§ 6-5-60,** *et seq*

115.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Alabama; (2) Granulated Sugar prices in the State of Alabama were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Alabama in violation of Ala. Code § 6-5-60, *et seq*. Defendants' conspiracy substantially affected Alabama commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 3**
**Alabama Deceptive Trade Practices Act**
**Ala. Code §§ 8-19-1,** *et seq.*

116.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose

their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

117.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

118.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

## COUNT 4
### Arizona
### Ariz. Rev. Stat. §§ 44-1401, *et seq.*

119.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Arizona; (2) Granulated Sugar prices in the State of Arizona were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Arizona in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq*. Defendants' conspiracy substantially affected Arizona commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 5
### Arizona Consumer Fraud Act
### Ariz. Rev. Stat. §§ 44-1521, *et seq.*

120.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for

Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

121.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

122.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**<u>COUNT 6</u>**
**Arkansas Deceptive Trade Practice Act**
**Ark. Code Ann. §§ 4-88-101, *et seq.***

123.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

124.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the

Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

125.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 7**
**California**
**Cal. Bus. & Prof. Code §§ 16700, *et seq*.**

126.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within California; (2) Granulated Sugar prices in the State of California were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of California in violation of Cal. Bus. & Prof. Code §§ 16700, *et seq*. Defendants' conspiracy substantially affected California commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 8**
**California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

127.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

128.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

129.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 9**
**Colorado**
**Col. Rev. Stat. §§ 6-4-101, *et seq.***

130.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Colorado; (2) Granulated Sugar prices in the State of Colorado were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Colorado in violation of Col. Rev. Stat. §§ 6-4-101, *et seq*. Defendants' conspiracy substantially affected Colorado commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 10**
**Colorado Consumer Protection Act**
**Col. Rev. Stat. §§ 6-1-101, *et seq.***

131.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their

unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

132. Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

133. Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

### COUNT 11
**Connecticut**
**Conn. Gen. Stat. §§ 35-24, *et seq.***

134. Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Connecticut; (2) Granulated Sugar prices in the State of Connecticut were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Connecticut in violation of Conn. Gen. Stat. §§ 35-24, *et seq*. Defendants' conspiracy substantially affected Connecticut commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

### COUNT 12
**Connecticut Unlawful Trade Practices Act**
**Conn. Gen. Stat. §§ 42-110A, *et seq.***

135. Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for

Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

136.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

137.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 13**
**District of Columbia**
**D.C. Code §§ 28-4501, *et seq.***

138.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within the District of Columbia; (2) Granulated Sugar prices in the District of Columbia were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the District of Columbia in violation of D.C. Code §§ 28-4501, *et seq*. Defendants' conspiracy substantially affected the District of Columbia commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under law.

**COUNT 14**
**District of Columbia Consumer Protection Procedures Act**
**D.C. Code §§ 28-3901, *et seq.***

139.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

140.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

141.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 15**
**Florida**
**Fla. Stat. §§ 542.15, *et seq.***

142.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Florida; (2) Granulated Sugar prices in the State of Florida were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Florida in violation of Fla. Stat. §§ 542.15, *et seq.*

Defendants' conspiracy substantially affected Florida commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 16**
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201, *et seq.***

143.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

144.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

145.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 17**
**Hawaii**
**Haw. Rev. Stat. §§ 480-1, *et seq.***

146.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Hawaii; (2) Granulated Sugar prices in the State of Hawaii were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals

have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Hawaii in violation of Haw. Rev. Stat. §§ 480-1, *et seq*. Defendants' conspiracy substantially affected Hawaii commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 18
### Illinois
### 740 ILCS 10/1, *et seq.*

147.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Illinois; (2) Granulated Sugar prices in the State of Illinois were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Illinois in violation of 740 ILCS 10/1, *et seq*. Defendants' conspiracy substantially affected Illinois commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 19
### Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/1, *et seq.*

148.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

149.   Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

150.   Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 20**
**Iowa**
**Iowa Code §§ 553.1, _et seq_.**

151.   Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Iowa; (2) Granulated Sugar prices in the State of Iowa were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Iowa in violation of Iowa Code §§ 553.1, _et seq_. Defendants' conspiracy substantially affected Iowa commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 21**
**Iowa Private Right of Action for Consumer Frauds Act**
**Iowa Code §§ 714H.1, _et seq_.**

152.   Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their

39

unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

153.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

154.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

## COUNT 22
### Kansas
### Kan. Stat. §§ 50-101, *et seq.*

155.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Kansas; (2) Granulated Sugar prices in the State of Kansas were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Kansas in violation of Kan. Stat. §§ 50-101, *et seq.* Defendants' conspiracy substantially affected Kansas commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 23
### Maine
### Me. Stat. Tit. 10, §§ 1101, *et seq.*

156.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Maine; (2) Granulated Sugar prices in the State of Maine were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Maine in violation of Me. Stat. Tit. 10, §§ 1101, *et seq.* Defendants'

conspiracy substantially affected Maine commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 24
### Maryland
### M.D. Comm. Law Code §§ 11-204, *et seq.*

157.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Maryland; (2) Granulated Sugar prices in the State of Maryland were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Maryland in violation of state law. Defendants' conspiracy substantially affected Maryland commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 25
### Michigan
### Mich. Comp. Laws §§ 445.771, *et seq.*

158.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Michigan; (2) Granulated Sugar prices in the State of Michigan were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Michigan in violation of Mich. Comp. Laws §§ 445.771, *et seq*. Defendants' conspiracy substantially affected Michigan commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 26
### Michigan Consumer Protection Act
### Mich. Comp. Laws §§ 445.903, *et seq.*

159.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing,

stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

160.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

161.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 27**
**Minnesota**
**Minn. Stat. §§ 325D.49,** *et seq.*

162.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Minnesota; (2) Granulated Sugar prices in the State of Minnesota were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Minnesota in violation of Minn. Stat. §§ 325D.49, *et seq*. Defendants' conspiracy substantially affected Minnesota commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 28
### Minnesota Unfair or Deceptive Act
### Minn. Stat. §§ 325d.43-48, *et seq.*

163.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

164.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

165.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

## COUNT 29
### Mississippi
### Miss. Code §§ 75-21-1, *et seq.*

166.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Mississippi; (2) Granulated Sugar prices in the State of Mississippi were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Mississippi in violation of state law.

Defendants' conspiracy substantially affected Mississippi commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 30**
**Nebraska**
**Neb. Rev. Stat. §§ 59-801, *et seq.***

167.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Nebraska; (2) Granulated Sugar prices in the State of Nebraska were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Nebraska in violation of Neb. Rev. Stat. §§ 59-801, *et seq*. Defendants' conspiracy substantially affected Nebraska commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 31**
**Nebraska Deceptive Trade Practices Act**
**Neb. Rev. Stat. §§ 59-1601, *et seq.***

168.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

169.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the

Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

170.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 32**
**Nevada**
**Nev. Rev. Stat. §§ 598A.210, _et seq._**

171.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Nevada; (2) Granulated Sugar prices in the State of Nevada were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Nevada in violation of Nev. Rev. Stat. §§ 598A.210, _et seq_. Defendants' conspiracy substantially affected Nevada commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 33**
**Nevada Deceptive Trade Practices Act**
**Nev. Rev. Stat. §§ 598A, _et seq._**

172.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

173.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

174.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 34**
**New Hampshire**
**N.H. Rev. Stat. §§ 356:1, *et seq.***

175.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within New Hampshire; (2) Granulated Sugar prices in the State of New Hampshire were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of New Hampshire in violation of N.H. Rev. Stat. §§ 356:1, *et seq*. Defendants' conspiracy substantially affected New Hampshire commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 35**
**New Hampshire Consumer Protection Act**
**N.H. Rev. Stat. §§ 358-A:1, *et seq.***

176.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose

their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

177.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

178.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 36**
**New Mexico**
**N.M. Stat. §§ 57-1-1, *et seq.***

179.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within New Mexico; (2) Granulated Sugar prices in the State of New Mexico were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of New Mexico in violation of N.M. Stat. §§ 57-1-1, *et seq*. Defendants' conspiracy substantially affected New Mexico commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 37**
**New Mexico Unfair Practices Act**
**N.M. Stat. §§ 57-12-1, *et seq.***

180.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and

commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

181.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

182.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 38**
**New York**
**N.Y. Gen. Bus. Law §§ 340,** *et seq.*

183.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within New York; (2) Granulated Sugar prices in the State of New York were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of New York in violation of N.Y. Gen. Bus. Law § 340, *et seq.* Defendants' conspiracy substantially affected New York commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 39**
**New York General Business Law**
**N.Y. Gen. Bus. Law §§ 349**

184.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

185.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

186.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 40**
**North Carolina**
**N.C. Gen. Stat. §§ 75-1, *et seq.***

187.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within North Carolina; (2) Granulated Sugar prices in the State of North Carolina were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of North Carolina in violation of N.C. Gen. Stat.

§§ 75-1, *et seq*. Defendants' conspiracy substantially affected North Carolina commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 41**
**North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1, *et seq*.**

188.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

189.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

190.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 42**
**North Dakota**
**N.D. Cent. Code §§ 51-08.1-01, *et seq*.**

191.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within North Dakota; (2) Granulated Sugar prices in the

State of North Dakota were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of North Dakota in violation of N.D. Cent. Code §§ 51-08.1-01, *et seq*. Defendants' conspiracy substantially affected North Dakota commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 43
### Oregon
### Or. Rev. Stat. §§ 646.725, *et seq*.

192.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Oregon; (2) Granulated Sugar prices in the State of Oregon were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Oregon in violation of Or. Rev. Stat. §§ 646.725, *et seq*. Defendants' conspiracy substantially affected Oregon commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 44
### Oregon Unlawful Trade Practices Act
### Or. Rev. Stat. §§ 646.605, *et seq*.

193.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their

unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

194.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

195.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

## COUNT 45
### Pennsylvania Unfair Trade Practices and Consumer Protection Law
### Pa. Stat. Ann. §§ 201-1, *et seq.*

196.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

197.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

198.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

## COUNT 46
### Rhode Island
### R.I. Gen. Laws §§ 6-36-7, *et seq.*

199.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Rhode Island; (2) Granulated Sugar prices in the State of Rhode Island were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Rhode Island in violation of R.I. Gen. Laws §§ 6-36-7, *et seq.* Defendants' conspiracy substantially affected Rhode Island commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 47
### Rhode Island Unfair Trade Practices and Consumer Protection Act
### R.I. Gen. Laws §§ 16-13.1, *et seq.*

200.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

201.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

202.     Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

### COUNT 48
**South Dakota**
**S.D. Codified Laws §§ 37-1-3.1, *et seq.***

203.     Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within South Dakota; (2) Granulated Sugar prices in the State of South Dakota were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of South Dakota in violation of S.D. Codified Laws §§ 37-1-3.1, *et seq*. Defendants' conspiracy substantially affected South Dakota commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

### COUNT 49
**South Dakota Deceptive Trade Practices and Consumer Protection Act**
**S.D. Codified Laws §§ 37-24-1, *et seq*.**

204.     Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

205.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

206.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

**COUNT 50**
**Tennessee**
**Tenn. Code §§ 47-25-101, *et seq.***

207.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Tennessee; (2) Granulated Sugar prices in the State of Tennessee were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Tennessee in violation of Tenn. Code §§ 47-25-101, *et seq*. Defendants' conspiracy substantially affected Tennessee commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

**COUNT 51**
**Tennessee Consumer Protection Act**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***

208.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose

their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

209.   Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

210.   Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

## COUNT 52
### Utah
### Utah Code §§ 76-10-3101, *et seq.*

211.   Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Utah; (2) Granulated Sugar prices in the State of Utah were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Utah in violation of Utah Code §§ 76-10-3101, *et seq*. Defendants' conspiracy substantially affected Utah commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

## COUNT 53
### Vermont
### 9 V.S.A. §§ 2453, *et seq.*

212.   Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Vermont; (2) Granulated Sugar prices in the State of Vermont were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Vermont in violation of 9 V.S.A. §§ 2453, *et seq*.

Defendants' conspiracy substantially affected Vermont commerce and, accordingly, Plaintiff and the members of the Class seek all forms of relief available under state law.

213.    Defendants engaged in unconscionable, false, misleading, or deceptive actions or practice in the conduct of trade or commerce (a) by conspiring to restrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar and by unreasonably restraining trade and commerce, resulting in Granulated Sugar sold at prices higher than it would have been but for Defendants' collusive behavior; (b) by unreasonably restraining trade through the practices, conduct, and omissions alleged herein; and (b) by concealing, omitting, and failing to disclose their agreement, collusion, and conspiracy, including the objects of their conspiracy, and their unreasonable restraint of trade to members of the consuming public, including Plaintiff and Class Members.

214.    Class Members were injured with respect to their indirect purchase of Granulated Sugar in that they paid more and will continue to pay more for Granulated Sugar produced by the Producing Defendants than they otherwise would in the absence of Defendants' unlawful conduct.

215.    Class Members are entitled to all forms of relief, including actual damages, statutory damages (where applicable), cost of suit, including attorneys' fees, and injunctive relief.

## **UNJUST ENRICHMENT**

### **COUNT 54**
**(In the alternative)**

216.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 – 90 above as if fully set forth herein.

217.    In the alternative to all other claims alleged herein, Plaintiff brings this claim on behalf of herself and members of the Nationwide Class under the common law of unjust enrichment.

218.    In the alternative, Plaintiff brings this claim under the laws of the states where Plaintiff and Class Members purchased Granulated Sugar produced by the Producing Defendants.

219.    The Producing Defendants benefitted through their unjust conduct by selling Granulated Sugar at prices higher than they otherwise would be in a competitive market, and by omitting their anticompetitive behavior and non-competitive pricing from the consuming public, including Plaintiff and Class Members.

220.    The Producing Defendants received and retained a benefit from Plaintiff and Class Members and inequity has resulted because Plaintiffs overpaid for Granulated Sugar produced by the Producing Defendants.

221.    It is inequitable for the Producing Defendants to retain the benefit of their collusive, anticompetitive, and deceptive behavior.

222.    Plaintiff and Class Members, all indirect purchasers of Granulated Sugar, do not have an adequate remedy at law.

223.    As a result of the Producing Defendants' conduct, the amount of their unjust enrichment should be disgorged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment:

A.    Finding that Defendants' conduct violates the Sherman Act, 15 U.S.C. §§ 1, 3, and the Clayton Act, 15 U.S.C. § 14;

B.    Finding that Defendants' conduct violates the state laws alleged herein;

C.    Awarding injunctive relief to Plaintiff and Class Members under Section 16 of the Clayton Act, 15 U.S.C. § 26, as well as under any applicable state laws;

D.      Awarding damages, including statutory and treble damages, and all appropriate relief to Plaintiff and Class Members, as indirect purchasers, under the state laws alleged herein;

E.      Awarding costs of suit, including reasonable attorneys' fees, as allowed by law;

F.      Awarding pre-judgment and post-judgment interest at the highest rate allowed by law; and

G.      Granting such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury as to all matters so triable.

April 12, 2024                          Respectfully submitted,

                                        By: /s/ *Peter Prieto*
                                        **PODHURST ORSECK, P.A.**
                                        Peter Prieto
                                        Florida Bar No. 501492
                                        Matthew P. Weinshall
                                        Florida Bar No. 84783
                                        Dayron Silverio
                                        Florida Bar No. 112174
                                        One S.E. 3rd Avenue, Suite 2300
                                        Miami, FL 33131
                                        (305) 358-2800
                                        pprieto@podhurst.com
                                        mweinshall@podhurst.com
                                        dsilverio@podhurst.com